IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:12-CR-14-D
No. 7:15-CV-239-D

| | |
|---|---|
| DAVID TYRONE MURRELL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

On March 30, and May 15, 2015, David Tyrone Murrell ("Murrell") moved for an order directing counsel to surrender papers relating to his case. See [D.E. 105, 106]. On November 3, 2015, Murrell moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his 210-month sentence [D.E. 110] and moved for a hearing [D.E. 111]. On July 18, 2016, the government moved to dismiss Murrell's section 2255 motion [D.E. 119] and filed a memorandum in support [D.E. 120]. On August 22, 2016, Murrell responded in opposition [D.E. 122]. As explained below, the court denies Murrell's motion for an order directing counsel to surrender papers relating to his case and motion for a hearing, grants the government's motion to dismiss, and dismisses Murrell's section 2255 motion.

I.

A.

On April 12, 2013, pursuant to a plea agreement, Murrell pleaded guilty to possession with intent to distribute 28 grams or more of cocaine base (crack). See [D.E. 39, 40, 59]. On May 22, 2014, the court held Murrell's sentencing hearing. See Sentencing Tr. [D.E. 101]. At the hearing,

the court adopted the facts set forth in the Second Revised Presentence Investigation Report ("PSR") [D.E. 74] and ruled on Murrell's objections. See Sentencing Tr. at 6, 51–56; Fed. R. Crim. P. 32(i)(3)(A)-(B). The court calculated Murrell's total offense level to be 36, his criminal history category to be IV, and his advisory guideline range to be 262 to 327 months' imprisonment. See Sentencing Tr. at 56. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court varied down, sentenced Murrell to 210 months' imprisonment, and dismissed the remaining two counts pursuant to the plea agreement. See id. at 62–68.

Murrell appealed. On January 5, 2015, the United States Court of Appeals for the Fourth Circuit enforced the appellate waiver in Murrell's plea agreement and dismissed the appeal of his downward variant sentence. See [D.E. 102].

On November 3, 2015, Murrell filed his section 2255 motion. See [D.E. 110]. Murrell claims that his first two appointed attorneys were ineffective during his first three sentencing hearings. See id. at 4; [D.E. 110-1] 8–16. According to Murrell, but for the ineffective assistance of counsel at his first three sentencing hearings, he would have received a sentence of between 100 to 125 months or a sentence of 151 months. See [D.E. 110-1] 17–19. Thus, Murrell asks the court to vacate his sentence and resentence him. See id. at 20. On July 18, 2016, the government moved to dismiss Murrell's motion for failure to state a claim upon which relief can be granted. See [D.E. 119, 120].

B.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd,

566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court also may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013).

"The Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding. See, e.g., Missouri v. Frye, 566 U.S. 134, 141 (2012); Lafler v. Cooper, 566 U.S. 156, 165 (2012). "[S]entencing is a critical stage of trial at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed." United States v. Breckenridge, 93 F.3d 132, 135 (4th Cir. 1996); see Glover v. United States, 531 U.S. 198, 203–04 (2001). To state a claim of ineffective assistance of counsel in violation of the Sixth

3

Amendment, Murrell must show that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984).

The "performance inquiry" focuses on "whether counsel's assistance was reasonable considering all the circumstances." Id. at 688. When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. The defendant must overcome the presumption that, under all the circumstances, the challenged actions "might be considered sound trial strategy." Id. (quotations omitted). A defendant making a claim of ineffective assistance "must identify the acts or omissions of counsel that are alleged not to be the result of reasonable professional judgment." Id. at 690. "The court must then determine whether, in light of all the circumstances, the identified acts or admissions were outside the wide range of professionally competent assistance." Id.

The prejudice component requires the defendant to show that counsel's deficient performance prejudiced the defendant. See id. at 691–96. The defendant does so by showing that there is a "reasonable probability" that, but for the deficient performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In analyzing prejudice, "a court should presume, absent grounds of evidentiary insufficiency, that the judge or jury acted according to law." Id. "An assessment of

4

the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, nullification, and the like." Id. at 695 (quotation omitted). A defendant has "no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed." Id. In analyzing prejudice, the court must proceed on the assumption that "the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." Id. "It should not depend on the idiosyncracies of the particular decisionmaker, such as unusual propensities towards harshness or leniency." Id. Thus, "evidence about the actual process of decision, if not part of the report of the proceeding under review, and evidence about, for example, a particular judge's sentencing practices, should not be considered in the prejudice determination." Id.

II.

Murrell's ineffective-assistance claims concern the conduct of his first two appointed counsel (Sonya Allen and James B. Craven III) at his first three sentencing hearings. On April 12, 2013, pursuant to a plea agreement, Murrell pleaded guilty to possession with intent to distribute 28 grams or more of cocaine base (crack) (count one). See [D.E. 39, 40, 59]. The offense conduct in count one took place on March 9, 2011. See [D.E. 1] 1; [D.E. 40] 3. As part of the plea agreement, the government agreed to dismiss counts two and three at sentencing. See [D.E. 40] ¶ 4(a). Count two charged Murrell with possession of a firearm in furtherance of a drug-trafficking offense on March 9, 2011. See [D.E. 1] 1. Count three charged Murrell with possession of a firearm and ammunition by a convicted felon on March 9, 2011. See id. at 2.

Before the sentencing hearing, the United States Probation Office prepared a Presentence Investigation Report ("PSR"). See [D.E. 42]. The PSR included a base offense level of 32 based on 418 grams of cocaine base (crack), a two-level firearm enhancement under U.S.S.G.

5

§ 2D1.1(b)(1), and a three-level reduction for acceptance of responsibility. See id. ¶¶ 43–52. Thus, the total offense level in the PSR was 31. See id. ¶ 52. When the total offense level of 31 was coupled with Murrell's criminal history category IV, the PSR identified Murrell's advisory guideline range as 151 to 181 months. See id. ¶ 54. The PSR addendum included Murrell's objections. Murrell objected to 250 grams of cocaine base (crack) attributed to Murrell from a confidential informant, to the firearm enhancement under U.S.S.G. § 2D1.1(b)(1), and to the failure to use a 1:1 ratio for cocaine base (crack). See id. at 12–13.

On July 22, 2013, the Honorable Terrence W. Boyle held the first sentencing hearing. See [D.E. 47] 3. Attorney Sonya Allen represented Murrell at the hearing. Id. At the hearing, the court received evidence concerning Murrell's objections to the PSR. See id. at 6–10. The court also heard argument about the advisory guideline range, including the drug weight and the firearm enhancement. Id. The court declined to count the 250 grams of cocaine base (crack) attributed to Murrell from a confidential informant and sustained the objection to that 250 grams of cocaine base (crack). See id. at 10. The court, however, overruled Murrell's objection to the firearm enhancement. See id. Allen then asked to be heard further about the firearm enhancement and asked the court to sustain the objection to the firearm enhancement. Id. at 10–12. Allen told the court that if the court sustained the firearm objection, Murrell's advisory guideline range would be 84 to 105 months' imprisonment based on a total offense level 25 and criminal history category IV. See id. at 12. Allen also told the court that the advisory guideline range would be 100 to 125 months' imprisonment if the court overruled the firearm enhancement. See id. The court asked Allen what she wanted to say about the sentence. Id. Allen discussed the section 3553(a) factors and requested a 60-month sentence. Id. at 12–16.

6

Before Murrell allocuted, the court discussed Murrell's serious and violent criminal history and told Murrell that "your sentence is up in the air right now, and we'll see what it's going to be." Id. at 17. Murrell's criminal history includes convictions for simple assault (twice), simple affray (twice), possession of drug paraphernalia, assault with a deadly weapon, discharging a firearm in the city, assault with a deadly weapon inflicting serious injury, fleeing to elude arrest with a motor vehicle, and resisting a public officer. See [D.E. 74] ¶¶ 14–22. Murrell then allocuted. See Sentencing Tr. at 17–19. Murrell told the court that he did not possess a firearm in connection with count one on March 9, 2011, and minimized his criminal history. See id. Judge Boyle did not make any final decisions concerning Murrell's advisory guideline range or sentence and continued the hearing to "think about" the case. See id. at 19.

On August 21, 2013, the court reconvened for a second sentencing hearing. See [D.E. 53]. Allen again represented Murrell at the hearing, and Judge Boyle continued to preside. See id. The court again considered Murrell's objections to the PSR. See id. at 3–5. Murrell again told the court that he did not possess a firearm in connection with count one on March 9, 2011. See id. at 5–8. During the hearing, Judge Boyle told the parties that he was considering taking away acceptance of responsibility because he believed that Murrell was not being honest about his behavior, including Murrell's denial that the $6,000.50 in cash he was carrying on March 9, 2011, was drug proceeds and his denial concerning possessing the firearm on March 9, 2011, in connection with count one. See id. at 8–9, 13–14. Murrell then addressed the court and again denied possessing a firearm in connection with count one on March 9, 2011, and denied that the $6,000.50 in cash was drug proceeds. Id. at 14. Judge Boyle asked the probation officer to review the entire PSR and revise the PSR as appropriate in light of the first two hearings. Id. at 17. Judge Boyle continued the sentencing hearing and told the parties that he was considering recusing himself. Id.

7

On October 8, 2013, Allen moved to withdraw as Murrell's counsel. See [D.E. 48]; see also [D.E. 49]. On October 15, 2013, Judge Boyle granted Allen's motion to withdraw. See [D.E. 50]. On October 16, 2013, Murrell's second appointed counsel, James B. Craven III, filed a notice of appearance. See [D.E. 51].

On December 18, 2013, Murrell appeared for his third sentencing hearing. See [D.E. 71]. Craven represented Murrell at the hearing, and Judge Boyle continued to preside. Id. Before the hearing, probation prepared and distributed a revised PSR. See [D.E. 57]; [D.E. 57-1]. The revised PSR included a base offense level of 32 based on 295.58 grams of cocaine base (crack),[1] a firearm enhancement under U.S.S.G. § 2D1.1(b)(1), an obstruction-of-justice enhancement under U.S.S.G. § 3C1.1 for Murrell's dishonesty during the first two sentencing hearings, and no credit for acceptance of responsibility. See [D.E. 57] ¶¶ 44–52. According to the PSR, Murrell's total offense level was 36, his criminal history category was IV, and his advisory guideline range was 262 to 327 months' imprisonment. Id. ¶ 54; see [D.E. 57-1]. The PSR addendum included Murrell's objections to the drug weight, the conversion of $6,000.50 in cash to 127.58 grams of crack cocaine, and the failure to receive credit for acceptance of responsibility. See [D.E. 57] 13–14.

At the third sentencing hearing, Craven acknowledged the revised PSR and acknowledged that Murrell's own statements to the court at the earlier hearings had resulted in a higher advisory guideline range in the revised PSR. [D.E. 71] 3–4. During the third sentencing hearing, the court twice stated that it had not made up its mind during the earlier hearings on the appropriate sentence.

---

[1] The revised PSR removed the 250 grams of cocaine base (crack) attributed to Murrell from a confidential informant in the original PSR. See [D.E. 57] ¶¶ 6–7, 44; cf. [D.E. 42] ¶ 7. The revised PSR, however, converted $6,000.50 in cash that Murrell possessed at the time of his arrest on March 9, 2011, into cocaine base (crack). See [D.E. 57] ¶¶ 7, 44; cf. [D.E. 42] ¶ 6. Thus, the total drug weight in the revised PSR was 295.98 grams, and included the 168 grams of cocaine base (crack) that Murrell possessed on March 9, 2011, when he was arrested, and 127.58 grams of cocaine base (crack) from the conversion calculation arising from the $6,000.50. See [D.E. 57] ¶¶ 6–7, 44.

See id. at 3–6. At the third sentencing hearing, Murrell allocuted and stated that he told Allen that if he got a sentence 120 months or less, then he did not want to argue about the PSR. Id. at 8. Craven then addressed the court and asked for a sentence under 120 months. Id. at 10. The Assistant United States Attorney ("AUSA") then requested a sentence within the advisory guideline range of 262 to 327 months. See id. at 10.

The court took a brief recess. Id. at 10. After the recess, the court asked the probation officer what the advisory guideline range would be if the court gave Murrell acceptance of responsibility and did not convert the $6,000.50 in cash to 127.85 grams of crack cocaine. Id. at 10–11. The probation officer responded that the advisory guideline range would become 121 to 151 months' imprisonment based on a total offense level of 29 and a criminal history category of IV. See id. at 10–11.

The AUSA then argued that the court should not give Murrell acceptance of responsibility due to his repeated dishonesty during the first two sentencing hearings. Id. at 11–13. The court then asked the AUSA how the court should account for "bad lawyering" at the first two sentencing hearings that led to a higher advisory guideline range in the revised PSR. See id. at 13–14. The AUSA responded that Murrell "did it to himself" with his repeated dishonesty to the court during the first two sentencing hearings. Id. at 14.

The court asked Craven to respond to the AUSA's argument. Id. at 14–15. Craven responded that Murrell did not object to the obstruction-of-justice enhancement in the revised PSR in light of Murrell's dishonesty during the first two sentencing hearings, but asked the court to give Murrell acceptance of responsibility. See id. at 15. The court then stated that it was inclined to use the advisory guideline range from the original PSR of 151 to 188 months' imprisonment based on a total offense level of 31 and a criminal history category IV. See id.

9

The AUSA and Craven agreed to an advisory guideline range of 151 to 188 months. Id. Craven then stated that if he had been counsel at the first sentencing hearing, he would have argued for a sentence lower than 151 months. See id. at 16. The court then observed that Murrell had created his own problems by being dishonest in court at the first two hearings. Id. The court also opined that if Murrell had not been dishonest, he would have received a guideline sentence at the earlier sentencing hearing. See id. The court then indicated that it was going to sentence Murrell to 151 months' imprisonment. Id. at 17.

Murrell then allocuted. Id. Murrell stated that the court should reduce the total offense level from 31 to 29 based on removing the 250 grams that the confidential informant attributed to Murrell in the original PSR, reduce the advisory guideline range to 121 to 151 months, and sentence Murrell to 120 months. See id. at 17–18. Craven also urged the court to reduce the total offense level to 29. See id. The court then told the parties that it was probably going to recuse. Id. Craven responded, "We'll take the 151." Id. at 19. The court replied, "I'm not going to do it. It's too late." Id.

On December 19, 2013, Judge Boyle recused, and the case was reassigned to this court. See [D.E. 64]. On that same date, Murrell moved for new counsel. See [D.E. 62]. On December 20, 2013, the court granted the motion for new counsel and ordered that Murrell receive his third appointed counsel. See [D.E. 65]. On December 23, 2013, attorney Lewis A. Thompson III filed his notice of appearance. See [D.E. 66].

On March 24, 2014, probation filed a second revised PSR. See [D.E. 74]. The second revised PSR had a base offense level of 32 based on 295.58 grams of cocaine base (crack), a two-level firearm enhancement under U.S.S.G. § 1D1.1(b)(1), a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 for Murrell's dishonesty at the first two sentencing hearings, and no reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. See id. ¶¶ 43–52. Thus, the

total offense level in the second revised PSR was 36. Id. ¶ 52. When coupled with Murrell's criminal history category IV, Murrell's advisory guideline range in the second revised PSR was 262 to 327 months' imprisonment. See id. ¶ 54. In the second revised PSR addendum, Murrell objected to converting the $6,000.50 in cash to 127.58 grams of crack cocaine, and the government and Murrell both objected to Murrell not receiving acceptance of responsibility. See id. at 13–14.

On April 25, 2014, the court held a presentencing hearing. See [D.E. 83]. Murrell appeared at the hearing with Thompson. See id. at 2. The court advised the parties that each side would start with a "new slate" at the sentencing hearings, but that the court would not ignore admissions made at the earlier sentencing hearings. See id. at 4–5. The AUSA then told the court that the Department of Justice's policy concerning guideline calculations involving crack cocaine had become more favorable towards Murrell since the earlier sentencing hearings. See id. at 5–6.

On May 22, 2014, the court held Murrell's sentencing hearing. See [D.E. 101]. Murrell appeared at the hearing with Thompson. Id. at 4. The court adopted the facts set forth in the PSR except as to matters in dispute as set forth in the addendum. Id. at 6; Fed. R. Crim. P. 32(i)(3)(A)-(B). The court received evidence concerning the objections. See id. at 6–48. After receiving the evidence, the court declined to include the 250 grams of cocaine base (crack) from the confidential informant. See id. at 51–52. As for the conversion of the $6,000.50 to 127.58 grams of crack cocaine, the court overruled Murrell's objection to converting the $6000.50 into crack cocaine. See id. at 52–53. As for obstruction-of-justice enhancement and the denial of acceptance of responsibility, the court found that Murrell had obstructed justice at the first two sentencing hearings and did not give Murrell acceptance of responsibility. See id. at 53–56. The court calculated the advisory guideline range as 262 to 327 months' imprisonment based on a total offense level of 36 and a criminal history category of IV. See id. at 56.

11

The court then heard argument from Thompson. Thompson discussed the section 3553(a) factors and requested a sentence of between 100 to 120 months. See id. at 56–57. Murrell then allocuted and claimed that Allen ignored his request to not object to the PSR so long as he got a sentence of 100 to 125 months. Id. at 57–58. Murrell also stated that, upon Allen's advice, he signed a second acceptance of responsibility statement admitting possession of the firearm on March 9, 2011, in order to get acceptance of responsibility. See id. at 58–59. Murrell also stated that after the first sentencing hearing, the probation officer told Murrell that if he signed the second acceptance of responsibility letter admitting possession of the firearm, the probation officer would recommend in the revised PSR that Murrell receive acceptance of responsibility, but the probation officer did not know if Judge Boyle would give Murrell acceptance of responsibility. See id. at 59. Murrell then denied lying "to this courtroom" or to Judge Boyle. Id. at 60. "What I'm guilty of is possession of 168 grams of crack, and accepting responsibility for it, to try to get back to my family and my kids." Id. at 60. The AUSA then requested a sentence for Murrell at the low end of the advisory guideline range (i.e., 262 months' imprisonment). Id. at 61.

The court considered all arguments of counsel, Murrell's allocution, and the entire record. See id. at 62–63. The court discussed the section 3553(a) factors. See id. The court noted Murrell's serious offense behavior and serious and violent criminal history. See id. at 63–64. The court then discussed other relevant section 3553(a) factors, including Murrell's personal history, characteristics, and circumstances, and the need for general and individual deterrence and for just punishment. See id. at 64. The court varied down and sentenced Murrell to 210 months' imprisonment. See id. at 64–65. The court also announced that it would impose the same sentence as an alternative variant sentence if the court has miscalculated the advisory guideline range. See id. at 66; United States v.

Gomez-Jimenez, 750 F.3d 370, 382–86 (4th Cir. 2014); United States v. Hargrove, 701 F.3d 156, 161–65 (4th Cir. 2012).

III.

Murrell contends that Allen and Craven were ineffective during his first three sentencing hearings. See [D.E. 110] 4; [D.E. 110-1] 8–16. According to Murrell, but for the ineffective assistance of counsel at his first three sentencing hearings, he would have received a sentence of between 100 to 125 months or a sentence of 151 months. See [D.E. 110-1] 17–19. Thus, Murrell asks the court to resentence him. Id. at 20.

A.

Murrell contends that but for Allen's ineffectiveness in arguing about the firearm enhancement under U.S.S.G. § 2D1.1(b)(1), Judge Boyle would have sentenced him to between 100 and 125 months at the first sentencing hearing. See [D.E. 110-1] 13, 19. Murrell also contends that Allen was ineffective because, after the second sentencing hearing, she advised him to sign a second statement of acceptance of responsibility and acknowledge possessing the firearm on March 9, 2011, in order to have a better chance of getting credit for acceptance of responsibility at sentencing, but that the second statement of acceptance of responsibility ultimately was used to find that Murrell obstructed justice and to deny Murrell acceptance of responsibility. See id. at 15–16, 19.

As for Murrell's contention that Allen's objection to the firearm enhancement under U.S.S.G. § 2D1.1(b)(1) was ineffective assistance, the original PSR contained Murrell's objection concerning the firearm enhancement. See [D.E. 42] 12–13; cf. id. ¶ 43. Allen included that objection because Murrell insisted that he never possessed a firearm on March 9, 2011, in connection with count one. In assessing Allen's performance concerning the objection to the firearm enhancement, this court cannot ignore Murrell's multiple statements to Allen (and others) that he

13

never possessed the firearm on March 9, 2011. See Burt v. Titlow, 134 S. Ct. 10, 17 (2013) ("Although a defendant's proclamation of innocence does not relieve counsel of his normal responsibilities under Strickland, it may affect the advice counsel gives."); Strickland, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."); Jones v. Murray, 947 F.2d 1106, 1109–11 (4th Cir. 1991); cf. [D.E. 47] 4, 17–19; [D.E. 53] 3–9, 14–15; [D.E. 71] 17–18. In light of Murrell's multiple statements to Allen (and others) that he never possessed a firearm on March 9, 2011, Allen acted reasonably in objecting to the firearm enhancement. See Burt, 134 S. Ct. at 17; Strickland, 466 U.S. at 691; Jones, 947 F.2d at 1109–11. Thus, there was not deficient performance.

Alternatively, even if Allen's objection to the firearm enhancement was deficient performance, Murrell has not plausibly alleged that there is a "reasonable probability" that but for the alleged deficiency, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Notably, at no point during the first two sentencing hearings did Judge Boyle ever state that the advisory guideline range was 100 to 125 months or that he was going to impose a sentence of between 100 and 125 months. Indeed, neither sentencing hearing ever progressed to the point where Judge Boyle even heard from the AUSA concerning the section 3553(a) factors or the ultimate sentence. Cf. Fed. R. Crim. P. 32(i)(1)(C) ("At sentencing, the court must allow the parties' attorneys to comment on the probation officer's determination and other matters relating to the appropriate sentence."); Fed. R. Crim. P. 32(i)(4)(A)(iii) ("Before imposing sentence, the court must provide an attorney for the government an opportunity to speak equivalent to that of the defendant's attorney."); cf. Gall v. United States, 552 U.S. 38, 49–53 (2007) (describing sentencing process in

14

federal court). Rather, during the first two sentencing hearings, Judge Boyle discussed Murrell's objections to the PSR and heard Murrell repeatedly insist that he did not possess a firearm on March 9, 2011. See [D.E. 47] 18–19; [D.E. 53] 5–8, 14–15. Judge Boyle also heard Murrell minimize his criminal history and deny that the $6,000.50 in cash he possessed on March 9, 2011, was drug proceeds. See [D.E. 47] 17–19; [D.E. 53] 5–8, 14–15.

At the end of the second sentencing hearing, due to Judge Boyle's belief that Murrell had been dishonest during the first two sentencing hearings, the court told the parties that he was contemplating overruling the firearm objection, adding an obstruction-of-justice enhancement due to Murrell's dishonesty, and denying acceptance of responsibility. See [D.E. 53] 14–17. If all of these things happened, Murrell's advisory guideline range would have ended up exactly where it did: 262 to 327 months based on a total offense level of 36 and a criminal history category of IV. Instead, of doing these things at the end of the second sentencing hearing, the court continued the hearing and asked probation to review the entire PSR and revise the PSR as appropriate. Id. Thus, Murrell has not plausibly alleged prejudice due to Allen's objection to the firearm enhancement. See Strickland, 466 U.S. at 694–700.

As for Murrell's contention that Allen was ineffective because, after the second sentencing hearing, she advised Murrell to sign a second acceptance of responsibility statement and acknowledge possessing the firearm on March 9, 2011, in order to have a better chance of getting credit for acceptance of responsibility at sentencing, the claim fails. First, as to performance, Murrell's own statements about the firearm and the $6,000.50 in cash at the first two sentencing hearings prompted Judge Boyle to question Murrell's honesty, to question whether to give Murrell an obstruction-of-justice enhancement, and to question whether to deny giving Murrell credit for acceptance of responsibility. Accepting Murrell's allegation concerning Allen's advice as true for

15

purposes of Rule 12(b)(6), Allen's performance did not fall below an objective standard of reasonableness. See Strickland, 466 U.S. at 690–94. Allen acted reasonably in telling Murrell after the first two sentencing hearings that Judge Boyle could add a two-level obstruction enhancement and could deny acceptance of responsibility if Judge Boyle ultimately found that Murrell had obstructed justice at the first two hearings, including committing perjury about not possessing the firearm on March 9, 2011, and that acknowledging possession of the firearm might make it possible to get acceptance of responsibility. See U.S.S.G. § 3E1.1 cmt. n.4 ("Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply."); United States v. Knight, 606 F.3d 171, 175–77 (4th Cir. 2010) (acknowledging a district court's discretion to consider the totality of the circumstances in deciding whether the case was an "extraordinary" case permitting adjustments under both §§ 3C1.1 and 3E1.1); United States v. Grose, 254 F. App'x 190, 192 (4th Cir. 2007) (per curiam) (unpublished). Moreover, and in any event, whether Murrell submitted a second statement of acceptance of responsibility would not change the inquiry concerning whether Murrell had committed perjury and thereby obstructed justice during the first two hearings. Thus, Murrell has failed to plausibly allege deficient performance. See Strickland, 466 U.S. at 690–94.

As for prejudice, Murrell has failed to plausibly allege that, but for the second statement of acceptance of responsibility, there is a reasonable probability that the result of the proceeding would have been different. See Strickland, 466 U.S. at 694–700. The record demonstrates that the second statement of acceptance of responsibility did not result in Murrell losing acceptance of responsibility and getting an obstruction enhancement. Rather, it was Murrell's obstruction of justice at the first

16

two hearings and his continued failure to acknowledge, at all four sentencing hearings, possessing the firearm on March 9, 2011, that resulted in him losing acceptance of responsibility. Thus, Murrell's second claim against Allen fails.

B.

As for Craven, Murrell contends that but for Craven's ineffectiveness in discussing the drug weight towards the end of the third sentencing hearing, Murrell would have received a 151-month sentence. See [D.E. 110] 15–17. This court, however, has reviewed the transcript of the third sentencing hearing, and that transcript reveals that Murrell (not Craven) raised the drug weight issue after Judge Boyle tentatively indicated an inclination to sentence Murrell to 151 months' imprisonment. See [D.E. 71] 17–18. Murrell then asked for a sentence of 120 months. See id. at 18. Craven then discussed Murrell's drug-weight objection, but the court stated that it probably was going to recuse and would not be imposing a sentence that day. Id.

On this record, Craven's comments about the drug weight were reasonable in light of Murrell's statements to the court about the drug weight and Murrell's desire for a 120-month sentence. See Burt, 134 S. Ct. at 17; Strickland, 466 U.S. at 691; Jones, 947 F.2d at 1109–11. Thus, Murrell has not plausibly alleged deficient performance.

Alternatively, Murrell has not plausibly alleged that there is a "reasonable probability" that but for Craven's alleged deficient performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. After all, when Craven spoke, Judge Boyle had not decided on Murrell's sentence. Moreover, the very next day, Judge Boyle recused, and the case was reassigned. On this record, prejudice is totally speculative. See id. at 693–700. Thus, the claim fails.

17

C.

Murrell has requested an evidentiary hearing. See [D.E. 111]. Murrell contends that he needs a hearing to explore whether Allen advised him to sign a second acceptance of responsibility agreement. See id. 3 n.1. The court, however, has assumed without deciding that Allen did so advise Murrell. The court also has concluded that if Allen gave such advice, the advice did not violate the Sixth Amendment. Thus, there is no need for a hearing, and Murrell's request for a hearing is denied.

D.

After reviewing the claims presented in Murrell's motion, the court finds that reasonable jurists would not find the court's treatment of Murrell's claims debatable or wrong and that none of the claims deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

E.

Finally, the court addresses Murrell's motions for an order directing counsel to surrender papers relating to his case. See [D.E. 105, 106]. Murrell seeks grand jury transcripts, his indictment, his judgment and commitment order, FD-302s, his appellate briefs, his discovery, and letters he sent to Craven. See [D.E. 105] 1; [D.E. 106] 1. Murrell seeks relief pursuant to American Bar Association ("ABA") Rule of Professional Conduct 1.16(d) and Rule 47 of the Federal Rules of Criminal Procedure. See [D.E. 105] 1; [D.E. 106].

ABA Rule 1.16(d) does not apply to this case, and Rule 47 of the Federal Rules of Criminal Procedure does not entitle Murrell to the requested relief. Thus, the motions are denied.

IV.

In sum, the court GRANTS the government's motion to dismiss [D.E. 119], DISMISSES Murrell's section 2255 motion [D.E. 110], DENIES Murrell's motions to direct counsel to release papers [D.E. 105, 106], and DENIES Murrell's motion for an evidentiary hearing [D.E. 111].

SO ORDERED. This 12 day of May 2017.

JAMES C. DEVER III
Chief United States District Judge